**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION**

| | | |
|---|---|---|
| **LAREE METZGER**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: |
| v. | : | |
| | : | |
| **APPLE, INC.**, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** the Plaintiff, **LAREE METZGER** (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC**, and hereby submits the following Complaint and Demand for Jury Trial against **APPLE, INC.** (hereinafter referred to as "Apple" or "Defendant") and alleges the following upon personal knowledge and belief, and investigation of counsel:

**NATURE OF THE CASE**

1.      This is a products liability action seeking recovery for personal injuries and damages suffered by Plaintiff, after Plaintiff purchased and was injured by an Apple iPhone 12 (hereinafter referred to as "iPhone(s)" or "subject iPhone(s)") designed, manufactured, produced, tested, inspected, labeled, marketed, advertised, promoted, imported, distributed, and sold by Defendant Apple, Inc.

2.      In or around February 2022, Plaintiff purchased the subject iPhone from an AT&T store located in Strongsville, Ohio.

1

3. On or about June 9, 2023, the subject iPhone overheated and significantly burned Plaintiff's arm. As a result of the incident, Plaintiff continues to have discolored skin and scarring where the subject iPhone overheated and burned her.

4. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF LAREE METZGER

5. Plaintiff is a resident and citizen of the City of Lorain, County of Lorain, State of Ohio.

6. On or about June 9, 2023, the subject iPhone overheated and significantly burned Plaintiff's arm. As a result of the incident, Plaintiff continues to have discolored skin and scarring where the subject iPhone overheated and burned her.

## DEFENDANT APPLE, INC.

7. Defendant Apple, Inc. designs, manufactures, markets, imports, distributes, and sells a variety of consumer electronics, including smartphones, smartwatches, personal computers, and tablets, amongst others.

8. Defendant is a California Corporation with its principal place of business located at One Apple Park Way, Cupertino, CA 95014. At all times relevant, Apple, Inc. substantially participated in the distribution, design, marketing, import, manufacture, and sale of the subject iPhone, which caused Plaintiff's injuries and damages.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

11.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Ohio and has intentionally availed itself of the markets within Ohio through the promotion, sale, marketing, and distribution of its products.

**FACTUAL BACKGROUND**

12.     Defendants are engaged in the business of designing, manufacturing, producing, testing, inspecting, labelling, marketing, advertising, promoting, importing, distributing, and selling consumer electronics, including smartphones such as the Apple iPhone 12, which is the subject smartphone at issue in this litigation.

13.     Currently, Apple is the second largest smartphone vendor in the world, with 19.5% market share in the first quarter of 2025.[1] Apple's market share in 2024 was 18%, completing a total of 225.9 *million* shipments of smartphones.[2]

14.     Apple advertises that its iPhone smartphones are "beautiful," "durable," and "designed to be loved."[3] Apple further represents that its iPhones are "second to none" and "known for [their] iconic design and premium materials."[4]

15.     Apple represents to consumers that the subject iPhones in particular are designed to be "energy efficient, long lasting, and safe" and "go through rigorous testing before they leave our

---

[1] *See* https://www.idc.com/promo/smartphone-market-share/ (last accessed May 21, 2025).
[2] *See* https://canalys.com/newsroom/worldwide-smartphone-market-2024 (last accessed May 21, 2025).
[3] *See generally* https://www.apple.com/iphone/?afid=p240%7Cgo~cmp-14648718653~adg-126654826989~ad-753380183463_kwd-2258410302~dev-c~ext-~prd-~mca-~nt-search&cid=wwa-us-kwgo-iphone-NonCore_iPhone-iPhone-Avail-iPhone-iPhone-Apple-apple+iphone (last accessed May 21, 2025).
[4] *Id*.

doors."[5] Apple claims the subject iPhones use "software and power-efficient components that intelligently manage power consumption" and "optimize battery charging and reduce the effects of battery again."[6]

16.     Despite these representations, designed, manufactured, and sold a dangerously defect product, placing the Plaintiff, her family, and similar consumers in danger while using the subject iPhone.

**A.     The Dangers of Poorly Designed and Manufactured Lithium-ion Batteries**

17.     Smartphones, like the subject iPhone, often use lithium-ion batteries as their main source of power.

18.     According to the U.S. Department of Energy, each individual lithium-ion cell is comprised of an anode, a cathode, a separator, an electrolyte, and two collectors, and, in the most simple terms, works as such:

> The anode and the cathode store the lithium. The electrolyte carries positively charged lithium ions from the anode to the cathode and vice versa through the separator. The movement of the lithium ions creates free electrons in the anode which creates a charge at the positive current collector. The electrical current then flows from the current collector through a device being powered (cell phone, computer, etc.) to the negative current collector. The separator blocks the flow of electrons inside the battery…While the battery is discharging and providing an electric current, the anode releases lithium ions to the cathode, generating a flow of electrons from one side to the other. When plugging in the device, the opposite happens: Lithium ions are released by the cathode and received by the anode.[7]

---

[5] *See* Product Environmental Report: iPhone 12, p. 6 (https://www.apple.com/by/environment/pdf/products/iphone/iPhone_12_PER_Oct2020.pdf) (last accessed May 21, 2025).
[6] *Id*.
[7] *See* https://www.energy.gov/energysaver/articles/how-lithium-ion-batteries-work (last accessed May 21, 2025).

19. Lithium-ion batteries are highly-favored for use in rechargeable, portable devices like the subject iPhones, because they have a high "energy density" – compared to other types of batteries, lithium-ion batteries can store a higher amount of energy in a smaller space.

20. However, the electrolytes contained in lithium-ion cells are incredible flammable, and lithium-ion batteries carry a significantly increased risk of explosion when compared to traditional batteries.

21. The materials used in lithium-ion cells are, typically, thermally unstable. This instability makes lithium-ion cells particularly susceptible to a hazard known as "thermal runaway."

22. Thermal runaway can be described as "a phenomenon in which the lithium-ion cell enters and uncontrollable, self-heating state" resulting in "[e]jection of gas, shrapnel and/or particulates (violent cell venting); extremely high temperatures; smoke; [and/or] fire."[8]

23. Normally, in properly functioning lithium-ion cells, the only chemical action or reaction taking place is the movement of lithium ions between the positive and negative collectors, as described above. While it is expected that the battery's normal processes will generate some heat, any heat generated should be able to dissipate from the cell.

24. Thermal runaway occurs when a lithium-ion cell becomes so hot that it starts to self-generate heat, and heat is being generated much faster than it is dissipating.

25. As the temperature of the cell increases, the electrolyte solution in the cell starts to decompose. This decomposition leads to an increase in pressure inside the cell, which in turn causes the temperature of the cell to increase even further.

26. Once a critical temperature is reached, the cell's cathode begins to shed oxygen, making the cell combustible due to the reaction between the electrolyte solution and oxygen. This release

---

[8] *See* https://ul.org/research-updates/what-is-thermal-runaway/ (last accessed May 21, 2025).

of oxygen induces a chain reaction with the electrolyte medium in the cell and as the battery continues to heat up and generate gas, the pressure within the cell continues to build-up until, eventually, the cell explodes.

27.     A variety of factors influence a cell's susceptibility to thermal runaway, including the history of the cell (e.g. the number of total discharges and charges) or the load applied to the cell (if the cell is overcharged or over-discharged). However, thermal runaway can also occur if the lithium-ion cells are improperly designed or defectively manufactured.

28.     A well-designed and manufactured separator is supposed to melt at the point of the internal short circuit, resulting in a shutdown of the cell and prevention of thermal runaway. However, if the separator is poorly designed or constructed, it may not shutdown or prevent thermal runaway.

29.     An additional safety feature for many lithium-ion cells is "cell regulation." Regulated cells are a safety feature in which the circuitry within the cell prevents over and under voltage, thereby preventing a short circuit of the cell and reducing or eliminating the risk of thermal runaway and overheating.

30.     In addition, well-designed and manufactured lithium-ion batteries should possess a number of safety features which would prevent, or greatly reduce, the risk of thermal runaway. These features include temperature sensors, voltage converters/regulator circuits, shrouded connectors, voltage taps, and properly functioning vents.

31.     If any of these features is lacking, or has been poorly designed or constructed, the results can be catastrophic.

**B.**     **The Subject Incident**

32.     Plaintiff purchased the subject iPhone from an AT&T store located in Strongsville, Ohio. Plaintiff was a long-time iPhone user and felt iPhones were the best smartphones for communicating and keeping in touch with family and friends.

33.     On the night of June 9, 2023, Plaintiff climbed into bed, placed the subject iPhone face-down on the bed, and went to sleep. The iPhone was not plugged in to the charger when Plaintiff went to bed.

34.     When Plaintiff woke up the next morning, she had a severe stinging pain in her left arm and discovered a burn mark in the shape of her phone on her upper left arm. As a result of the incident, Plaintiff continues to have discolored skin and scarring where the subject iPhone overheated and burned her.

35.     Plaintiff purchased the subject iPhone because of Apple's reputation and representations about the subject iPhone's reliability, durability, and performance, and had no reason to expect that the subject iPhone would overheat and injure her.

36.     However, the aforementioned iPhone was defectively designed and manufactured by Apple in that it failed to properly function in that the subject iPhone's lithium-ion battery overheated, placing the Plaintiff, her family, and similar consumers in danger while using the iPhone.

37.     Apple's iPhones possess defects that make them unreasonably dangerous for their intended use by consumers because the phones' lithium-ion batteries can overheat, resulting in thermal burns, chemical burns, and fire hazards.

38.     Economic, safer alternative designs were available that could have prevented the iPhone's lithium-ion battery from overheating and burning Plaintiff.

39.    As a direct and proximate result of Defendants' intentional concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff used an unreasonably dangerous iPhone, which resulted in significant and painful bodily injuries to Plaintiff.

40.    Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's iPhone as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

<u>CAUSES OF ACTION</u>

<u>CAUSES OF ACTION I – IV</u>
**DEFECTIVE MANUFACTURING/CONSTRUCTION**
**DEFECTIVE DESIGN/FORMULATION**
**DEFECTIVE WARNING/INSTRUCTION**
**DEFECTIVE DUE TO NONCONFORMITY WITH REPRESENTATION**
**STRICT LIABILITY**
**Pursuant to ORC § 2307.71 *et seq.***

41.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

42.    At the time of Plaintiff's injuries, Defendant's iPhones, including the subject iPhone, were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

43.    The subject iPhone was in the same or substantially similar condition as when it left the possession of the Defendant.

44.    Plaintiff and her family did not misuse or materially alter the iPhone.

45.    The subject iPhone did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

8

46.     Defendant knew or should have known that the subject iPhones could overheat and experience thermal runaway resulting in burns to unsuspecting consumers, yet Defendant continued to market (and continues to do so) its iPhones to the general public.

47.     The Plaintiff in this case reasonably relied on Defendant's representations that their iPhones, including the subject iPhone, were safe, durable, and power-efficient.

48.     Defendant's iPhones are defective in design or formulation. R.C. 2307.75.

49.     Defendant's iPhones are defective due to inadequate warning or instruction. R.C. 2307.76.

50.     Defendant's iPhones are defective for failing to conform to a representation made by the manufacturer. R.C. 2307.77.

51.     Defendants are, or may be, liable as suppliers. R.C. 2307.78.

52.     The defective condition of the subject iPhone includes, *inter alia*, the following:

 a.  The subject iPhones designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

 b.  The seriousness of the potential burn injuries resulting from the product drastically outweigh any benefit that could be derived from its normal, intended use;

 c.  Defendant failed to properly market, design, manufacture, distribute, supply, and sell the subject iPhone, including iPhones similar or identical to the subject iPhone, despite having extensive knowledge that the aforementioned injuries could and did occur;

 d.  Defendant failed to use due care in designing and manufacturing the subject iPhone, including iPhones similar or identical to the subject iPhone, to avoid the aforementioned risks to individuals;

 e.  Defendant failed to warn and place adequate warnings and instructions on the subject iPhone, including iPhones similar or identical to the subject iPhone;

 f.  Defendant failed to adequately test the subject iPhone, including iPhones similar or identical to the subject iPhones, and its battery;

g.  Upon information and belief, Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages; and

h.  Upon information and belief, Defendant also failed to disclose material facts regarding the safety and efficacy of the subject iPhone, including iPhones similar or identical to the subject iPhone, including information regarding their propensity to cause personal injuries.

53.  Defendant's iPhones were defective in that at the time the subject iPhone left the control of Defendant, the foreseeable risks associated with its design or formulation exceeded the benefits associated with that design or formulation.

54.  The subject iPhone did not conform to the standards of similar or identical smartphones due to its propensity for the battery to overheat and/or undergo thermal runaway.

55.  The propensity for the phone's battery to overheat and undergo thermal runaway during its normal, foreseeable use, was not an open and obvious risk.

56.  The subject iPhone was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to its users and, in particular, Plaintiff.

57.  The Defendant in this case had a duty to provide Plaintiff and other consumers with true and accurate information and warnings of any known dangers of the iPhones it marketed, distributed and sold.

58.  The Defendant in this case knew or should have known, based on prior experience that its representations regarding its iPhones were false, and that it had a duty to disclose the dangers associated with their iPhones.

59.  As a direct and proximate result of Defendant's defective iPhone, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical expenses, and overall diminished enjoyment of life. The Defendant in this case is liable for these losses.

## CAUSE OF ACTION V
### NEGLIGENCE

60.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

61.     Defendant owed a duty of reasonable care to design, manufacture, market, and sell non-defective iPhones that are reasonably safe for their intended uses by consumers, such as Plaintiff.

62.    Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its iPhones in that Defendants knew or should have known that said iPhones, including the subject iPhone, created a high risk of unreasonable harm to the Plaintiff and consumers alike due to their propensity to overheat and/or undergo thermal runaway.

63.    The Defendant in this case was negligent in the design, manufacture, advertising, warning, marketing, and sale of its iPhones, including the subject iPhone, in that, *inter alia*, it:

   a.   Failed to properly market, design, manufacture, distribute, supply, and sell the subject iPhone, including iPhones similar or identical to the subject iPhone, despite having extensive knowledge that the aforementioned injuries could and did occur;

   b.   Failed to warn and place adequate warnings and instructions on the subject iPhone, including iPhones similar or identical to the subject iPhone;

   c.   Failed to adequately test the subject iPhone, including iPhones similar or identical to the subject iPhone;

   d.   Failed to use due care in designing and manufacturing the subject iPhone, including iPhones similar or identical to the subject iPhone, to avoid the aforementioned risks to individuals;

   e.   Placed an unsafe product into the stream of commerce; and

   f.   Was otherwise careless or negligent.

64.    As a direct and proximate result of Defendant's negligence, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical

expenses, and overall diminished enjoyment of life. The Defendants in this case is liable for these losses.

## CAUSE OF ACTION VI
## BREACH OF IMPLIED WARRANTIES

65. Plaintiff incorporates by reference incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

66. Defendants manufactured, supplied, and sold their iPhones, including the subject iPhone, with an implied warranty that they were fit for the particular purpose of communicating with friends and family, and were durable, safe, and battery-efficient.

67. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of these warranties.

68. Defendant's iPhones, including the subject iPhone, were not fit for the particular purpose as a safe and efficient means of communication, due to the unreasonable risks of bodily injury associated with their use.

69. Furthermore, Defendant's iPhones, including the subject iPhones, were not merchantable and fit for their ordinary purpose, because they have the propensity to overheat and/or undergo thermal runaway.

70. The Plaintiff in this case reasonably relied on Defendant's representations that its iPhones, including the subject iPhone, were fit for the particular purpose of communicating safely and efficiently.

71. Additionally, Plaintiff used the subject iPhone with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of communicating safely and efficiently.

72.     As a direct and proximate result of Defendant's breach of the aforementioned warranties, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical expenses and overall diminished enjoyment of life. The Defendant in this case is liable for these loses.

## JURY TRIAL DEMANDED

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendant as follows:

a.  For an award of compensatory damages, including damages against Defendant for pain and suffering, medical and hospital expenses, loss of income, permanent disability, and other damages according to proof at trial in excess of $75,000;

b.  For reasonable attorneys' fees and costs;

c.  For pre-judgment interest;

d.  Restitution, disgorgement of profits, and other equitable relief; and

e.  For such further relief as this Court deems necessary, just, equitable and proper.

Respectfully Submitted,

Dated: May 21, 2025

**JOHNSON BECKER, PLLC**

*/s/ Lisa Ann Gorshe, Esq.*
Lisa Ann Gorshe, Esq.
Adam J. Kress, Esq.* (MN #0397289)
Anna R. Rick, Esq.* (MN #0401065)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Ph: 612-436-1800
Fax: 612-436-1801
lgorshe@johnsonbecker.com
akress@johnsonbecker.com

13

arick@johnsonbecker.com

*Attorneys for Plaintiff*
*\*Pro Hac Vice forthcoming*